IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

DARRELL W. MILLER                          )
and PEGGY J. MILLER,                        )
                                           )
          Plaintiffs,                      )          TC-MD 111041N
                                           )
              v.                           )
                                           )
BENTON COUNTY ASSESSOR,                    )
                                           )
          Defendant.                       )          **DECISION**

Plaintiffs appealed Defendant's omitted property assessment, dated July 21, 2011, adding

both real market value and maximum assessed value to property identified as Account 397623

(subject property) for the 2005-06 through 2010-11 tax years. The parties filed Stipulated Facts

on February 17, 2012. Plaintiffs stipulated to the admission of Defendant's Exhibits B through

F. An oral argument was held in the Tax Courtroom in Salem, Oregon, on June 6, 2012.

Edward F. Schultz, Attorney at Law, appeared on behalf of Plaintiffs. Leona Sparks (Sparks),

appraiser, appeared on behalf of Defendant.

## I. STATEMENT OF FACTS

Construction began on the subject property structure, a home, in 2000. (Stip Facts at 1.)

On November 27, 2000, Defendant visited and completed an appraisal of the subject property.

(*Id.*) As part of its appraisal, Defendant indicated that the structure was 68 percent complete as

of January 1, 2001. (*Id.*) All other parts of the subject property, including land and yard

improvements, were valued at 100 percent complete. (*Id.* at 3.) Defendant noted in the remarks

section of the "CAAS-Residential Property Report" dated November 28, 2000, that the subject

property should be revisited and reappraised in 2002. (*Id.* at 1.) However, the information was

not properly entered into the computer system used by Defendant. (*Id.* at 1-2.) When an

appraiser notes that new construction on a property is not complete, it is Defendant's practice "to enter into the computer the need for a field visit to appraise the property and establish the percent complete of construction for the next tax year." (*Id.* at 2.)  A proper entry into the computer system would have prompted Defendant to visit the subject property to determine the percent complete as of January 1, 2002.  (*Id.*)  However, because of an "incorrect entry," Defendant was not notified to revisit the subject property to determine the percent complete.  (*Id.* at 3.)

In 2000, Plaintiffs signed a contract with Conser Homes, Inc., to purchase the subject property and the soon-to-be completed structure.  (*See* Stip Facts at 2.)  The deed from Conser Homes, Inc. to Plaintiffs was dated January 12, 2001.  (*Id.*)  Ten days later, Plaintiffs moved into the new structure.  (*Id.*)  On February 5, 2001, Defendant visited the subject property to verify the sale to Plaintiffs and to take pictures and measurements.  (*See id.*)  On February 6, 2001, Defendant entered another "CAAS-Residential Property Report" into its written records documenting the site visit and sales verification.  (*Id.* at 2; Ptf's Ex 5.)  The report entered February 6, 2001, stated that the subject property "home" was 68 percent complete.  (Ptf's Ex 5.)  The February 6, 2001, report included an "incorrect entry * * * for the year '01' and should have been for the year '02'.  This is because the November 2000 appraisal was for the tax year beginning January 1, 2001, and the field visit and reappraisal would have established the percent complete for January 1, 2002."  (Stip Facts at 2.)  As a result, Defendant never visited the subject property to determine the percent complete as of January 1, 2002, and Defendant continued to value the "home" as 68 percent complete until 2011.  (*Id.* at 3)

In 2011, Defendant initiated a review process that allowed identification of properties indicated to be less than 100 percent complete.  (Stip Facts at 3.)  Defendant visited and physically reappraised the identified properties as necessary.  (*Id.*)  Defendant determined the

subject property's structure was 100 percent complete. (*Id.*) Defendant treated the 32 percent of the subject property structure that was listed as incomplete as omitted property. (*Id.* at 4.) Defendant "changed the percent complete on the structure from 68 [percent] to 100 [percent] in the computer system." (*Id.*) Defendant's "staff made the computation for the tax years 2005 through 2010 valuing the structure at 100 [percent] complete. The computer system calculated the increase in value and the related increase in property tax to be paid" for the 2005-06 through 2010-11 tax years. (*Id.*) Defendant timely issued Notices of Intent to Add Omitted Property. (*Id.*)

During oral argument on June 6, 2012, Sparks stated that the 32 percent of the subject property structure that was incomplete reflected unfinished aspects of the interior of the structure at the time of Defendant's appraisal on November 27, 2000. (*See also* Def's Ex C-1 ("New Construction Form" identifying the percentage complete of various components of the subject property structure and estimating that the unfinished components of the subject property structure as 32 percent).) Plaintiff's obtained an appraisal of the completed subject property as of January 2, 2001. (Stip Facts at 2.) Sparks conceded that the structure may have been 100 percent complete at the time of the site visit on February 5, 2001, but Defendant was not looking for previously omitted property when an appraiser visited the subject property to verify the sale.

## II. ANALYSIS

The issue before the court is whether the real market value of 32 percent of the subject property structure that was incomplete as of November 27, 2000, constitutes omitted property that may be added to the tax roll for the 2005-06 through 2010-11 tax years under ORS 311.216.[1]

/ / /

---

[1] All references to the Oregon Revised Statutes (ORS) and the Oregon Administrative Rules (OAR) are to 2009.

ORS 311.216(1) provides:

> "Whenever the assessor discovers or receives credible information, or if the assessor has reason to believe that any real or personal property, including property subject to assessment by the Department of Revenue, or any buildings, structures, improvements or timber on land previously assessed without the same, has from any cause been omitted, in whole or *in part*, from assessment and taxation on the current assessment and tax rolls or on any such rolls for any year or years not exceeding five years prior to the last certified roll, the assessor shall give notice as provided in ORS 311.219."

(Emphasis added.) The Department of Revenue promulgated an administrative rule to determine what constitutes property subject to assessment as omitted property. OAR 150-311.216 states, in part:

> "(1) Omitted property includes any real or personal property, *or part thereof*, that has been omitted from the certified assessment and tax roll for any reason. Omitted property may include, but is not limited to, a separate freestanding structure or improvement, an addition that increases the square footage of a structure or improvement, a remodel which increases a structure's real market value, or real or personal property machinery and equipment.

> "(2) Property may be added to the roll under ORS 311.216 if:

>> "(a) Omitted due to the assessor's lack of knowledge of its existence,

>> "(b) Improvements are added to or made a part of a property after that property has been physically appraised, and are later discovered by the assessor[.]

>> "* * * * *

> "(3) Improvements which are *in existence and are an integral part of property* which is physically appraised may not later be revalued and added as omitted property under ORS 311.216. Undervaluation of a property due to the assessor's failure to consider a portion of the property is not omitted property correctable under 311.216."

(Emphasis added.)

Plaintiffs have the burden of proof and must establish their case by a preponderance of the evidence. *See* ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

The parties dispute whether the 32 percent of the subject property structure deemed incomplete as of November 27, 2000, is a "part" of the subject property improvements that was omitted from the assessment and tax roll, or rather an undervaluation by Defendant. Plaintiffs argue that, because Defendant determined the value of the subject property improvements as 100 percent complete and assessed the subject property improvements at only 68 percent of that value on January 1, 2001, Defendant's failure to subsequently assess the subject property improvements at 100 percent complete reflects an undervaluation by Defendant, not omitted property. Defendant argues that, under OAR 150-311.216(1) and (2), the 32 percent incomplete represents a part of the structure that has been omitted and may be added to the tax roll because the internal components were added and discovered after the property was physically appraised.

The administrative rule states, in pertinent part, that "[i]mprovements which are in existence and are an integral part of property which is physically appraised may not later be revalued and added as omitted property under ORS 311.216." OAR 150-311.216(3). Example 3 of OAR 150-311.216(4) illustrates application of that rule:

> "During a physical appraisal the assessor adds no value contribution for a reinforced concrete floor, and a manger with steel stanchions in a loft barn. The assessor later realizes that the loft barn is undervalued. The reinforced floor and manger with steel stanchions may not be added as omitted property under ORS 311."

The language of OAR 150-311.216(3) "incorporates, in substantial part, [the] reasoning of" *West Foods v. Department of Revenue* (*West Foods*), 10 OTR 7, 10-11 (1985). *Clackamas County Assessor v. Village at Main Street Phase II, LLC (Village)*, 349 Or 330, 334 n 5, 245 P3d 81 (2010). In *West Foods*, this court held that mushroom "growing beds," which were part of "growing rooms," could not be added as omitted property because they were "an integral part of the growing rooms and were part of the real property" at the time of the county assessor's appraisal." *West Foods*, 10 OTR at 11. The court reasoned that "[t]he failure of the appraiser to include the beds in the growing rooms resulted in an undervaluation of the growing rooms and not an omission of any 'buildings, structures or improvements' under the statute." *Id*.

In a recent decision, the Oregon Supreme Court considered whether "the statutory authorization to add property to the assessment roll that has been omitted 'in part' appl[ies] to an integral part of property that is listed on the assessment roll." *Village*, 349 Or at 336. The property at issue was "site developments." *Id*. at 334. The taxpayer construed ORS 311.216 narrowly, arguing that "in part * * * refer[s] only to distinct units of property," whereas the assessor read the statute "broadly * * * to treat an integral part of a single unit of property as property that has been omitted 'in part.' " *Id*. at 336. Finding that "[t]he text of ORS 311.216 permit[ted] both parties' interpretations[,]" the court considered the context and legislative history, including three amendments to the statute in 1951, 1971, and 1977. *Id*. at 336, 342-45.

The court observed that "[t]he 1951 and 1971 amendments created limited exceptions to the general rule that a component of property that is an integral part of property already listed on

/ / /

/ / /

/ / /

the assessment roll does not qualify as omitted property within the meaning of ORS 311.216." *Village*, 349 Or at 345.[2] The court "infer[red] from the statutory directive [under ORS 307.010(1)(a)] that the site developments [at issue were] an integral part of the land." *Id.* at 346. The court held that "the site developments come within the general rule that we draw from the 1907 statute -- that an integral part of property, which is listed on the assessment roll, does not qualify as omitted property." *Id.* at 346.

The interior components of the subject property structure that Defendant seeks to add as omitted property were not in existence as of Defendant's physical appraisal on November 27, 2000. However, the evidence presented supports a finding that the subject property was 100 percent complete as of Defendant's February 5, 2001, site visit. Plaintiffs obtained an appraisal of the completed subject property on January 2, 2001, and moved into the subject property residence shortly thereafter. On February 5, 2001, Defendant visited, took pictures of, and measured the subject property. Defendant argues that the February 5, 2001, site visit was not a "physical appraisal" under OAR 150-311.216(3).

"Physical appraisal" is not defined in OAR 150-311.216(3) or in ORS chapter 311, including the omitted property statutes. ORS 308.233 discusses the use of "sales data" "[f]or purposes of making a physical appraisal of property for ad valorem property taxation[.]" ORS 308.233(2) states: "The purpose of this section is to achieve equality and uniformity in assessed values between properties that are physically appraised and those that are not physically appraised, but subject to trending or indexing for the particular assessment year." Thus, ORS 308.233(2) suggests that a "physical appraisal" is distinct from "trending or indexing" to

---

[2] Notably, the 1951 amendment to the omitted property statute "authorize[d] an assessor to add to the assessment roll, as omitted property, 'any buildings, structures, improvements or timber on land previously assessed without the same.' " *Village*, 349 Or at 342. The court observed that, "[t]extually, the addition of that phrase implies that, without the authority granted by the amendment, the assessor could not add, as omitted property, 'buildings, structures, improvements or timber on land previously assessed without the same.' " *Id.*

determine real market value. Sparks stated that the purpose of the February 5, 2001, site visit was to verify the sale of the subject property to Plaintiffs, not to determine the percent complete of the subject property structure. However, she offered no authority to support her distinction between physical appraisals for the purpose of verifying sales and those for the purpose of determining percent complete. During the site visit on February 5, 2001, Defendant's appraiser took pictures and measured the subject property. Those activities are consistent with a physical appraisal, not "trending or indexing," and the court finds that Defendant's February 5, 2001, site visit was a "physical appraisal" of the subject property under OAR 150-311.216(3).

The court must next determine whether the interior components, comprising 32 percent of the subject property structure as complete, are an "integral part" of the subject property structure. In explaining its conclusion that "site developments are an integral part of the land," the court in *Village* noted that "it would be difficult to separate site developments, such as grading, roads, and storm drains, from the land of which they are a part." 349 Or at 346. Certainly, partially complete interior components of a structure are "difficult to separate" from the remainder of the structure. The internal components of the subject property structure that were incomplete as of November 27, 2000, are integral parts of that structure.

Based on the above analysis, the 32 percent of the subject property structure that was incomplete on November 27, 2000, cannot be added to the tax roll for the years at issue as omitted property. The 32 percent represents internal components that are integral parts of the structure that existed at the time of the second site visit on February 5, 2001. "Undervaluation of a property due to the assessor's failure to consider a portion of the property is not omitted property correctable under 311.216." OAR 150-311.216(3). Therefore, Defendant cannot add

the 32 percent of the subject property structure that was incomplete on November 27, 2000, as omitted property because it was not omitted, but rather undervalued.

### III. CONCLUSION

After careful review of the evidence, the court concludes that Defendant's failure to include the 32 percent of the subject property structure that was incomplete as of November 27, 2000, on the 2005-06 through 2010-11 tax rolls results in an undervaluation of the property and not an omission; thus, Defendant's omitted property notice must be canceled. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted.

Dated this ___ day of August 2012.

ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on August 29, 2012. The Court filed and entered this document on August 29, 2012.*