IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| RICHARD A. BROWN, Trustee for the Richard Brown Trust, | ) ) ) | |
| Plaintiff, | ) ) | TC-MD 230081R |
| v. | ) ) | |
| LINCOLN COUNTY ASSESSOR, | ) ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appealed an Amended Real Property Order from the Lincoln County Board of

Property Tax Appeals, dated February 15, 2023, concerning account R531317 (subject property).

Plaintiff challenges Defendant's addition of exception value from the completion of his home to

the 2022-23 tax roll. A video trial was held on December 13, 2023. Richard Brown appeared

and testified on his own behalf. Amy Long (Long), a county appraiser, appeared and testified on

behalf of Defendant. C.J. Hurtt (Hurtt), another county appraiser, also testified on behalf of

Defendant. Plaintiff's Exhibits 1 to 11 and Defendant's Exhibits A to F were received into

evidence. As further explained below, the court concludes that the Plaintiff did not meet his

burden of proof and denies Plaintiff's appeal on that basis.

I.  STATEMENT OF FACTS

A.  *Building Completion*

In 2019, Plaintiff purchased the subject property, and in autumn of that year, Plaintiff

began constructing a home on the property. The home was completed on or about August 28,

2020, when Lincoln City issued a certificate of occupancy. (Ptf's Ex 1.) On September 17,

2020, Plaintiff received the final invoice for construction. (Ptf's Ex 2.) Two days later, on

September 19, 2020, Plaintiff's homeowner's policy went into effect covering the subject

DECISION  TC-MD 230081R                                                                                           1

property. (Ptf's Ex 4.) Plaintiff paid the final construction invoice on October 19, 2020. (Ptf's Ex 3.)

B.      *Exception Value Assessment*

1.      *2021-2022 tax roll*

Hurtt testified that he has been an appraiser with Defendant for 10 years. He attempted to inspect the home on February 17, 2021, but no one was present. (*See also* Ptf's Ex 8.) Based on observations from outside the home, Hurtt estimated that the property was 90 percent complete as of January 1, 2021, citing visual evidence that the flooring was unfinished at the time of the inspection. Hurtt left a contact card at the property but received no response.

Defendant's 2021-22 tax roll increased the assessed real market value (RMV) of the subject property from $256,780 to $756,680 and increased the maximum assessed value (MAV) from $100,320 to $439,540. (Ptf's Ex 5). Plaintiff did not appeal this assessment.

2.      *2022-2023 tax roll*

Long testified that she has been a property appraiser for Defendant for two years. She inspected the subject property on February 11, 2022. (*See* Ptf's Ex 8.) She determined that the home was 100 percent complete as of January 1, 2022. (*Id.*). As a result, she added 10 percent to the value of the home as an "exception event" for the 2022-23 tax year. (*Id.*; *see also* Def's Ex F at 3 (Exception RMV of $61,660, exception MAV of $36,133 added to the 2022-23 tax roll)). Defendant's 2022-23 tax roll assessed the subject property at a RMV of $1,072,000 and a MAV of $488,850. (*Id.*; Ex 6.).

## II. ANALYSIS

Plaintiff requests removal of the exception value from the 2022-23 tax roll, arguing that the home was completed in August of 2020, prior to both the assessment date on January 1,

2021, and Defendant's site visit on February 17, 2021. Plaintiff contends that any undervaluation of the property in the prior assessment was due to Defendant's error in judgment and that Defendant is not permitted to add the exception value to the 2022-23 tax roll as omitted property. Moreover, even if the exception value could have been added as omitted property, Defendant did not follow the omitted property procedures codified in statute at ORS 311.216 to 311.232.[1] Defendant argues that the 2022-23 tax roll should be sustained and that it was entitled to add the subject improvements as "new property or new improvements" under ORS 308.153(3).

The burden of proof in this court falls on "the party seeking affirmative relief." ORS 305.427. In other words, the party who seeks a court order changing the current assessment must provide enough evidence. Here, Plaintiff must bear the burden to obtain a lower tax roll value.

Although Plaintiff initially challenged the 2022-23 RMV, he stipulated to that roll value during trial. The only remaining issue is whether the subject property incurred exception value under ORS 308.146(3), as either "omitted property" or "new property or new improvements" thereby justifying Defendant's increase of the MAV for the 2022-23 tax year by more than three percent.

A.    *Maximum Assessed Value and Exception Value*

The Oregon Constitution limits annual increases in ad valorem property taxes attributable to increases in property's real market value. Or. Const. art. XI, § 11 (implemented by statute at ORS 308.142 to 308.166). It does that through the concepts of "assessed value" and "maximum assessed value." Or. Const. art. XI, §§ 11(1)(b), (f); *see also* ORS 308.146(2) (defining assessed value). The property tax rate is applied to a property's assessed value, which is defined as the

---

[1] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to 2021.

lesser of its real market value or its maximum assessed value. ORS 308.146(2).

Generally, a property's MAV may increase no more than three percent each tax year. Or. Const. art. XI, §§ 11(1)(a), (b); ORS 308.146(1). However, there are six types of occurrences— known as "exception events"—that require a special determination of maximum assessed value, potentially increasing maximum assessed value by more than three percent in a given year. Or. Const. art. XI, § 11(1)(c); ORS 308.146(3). Value attributable to an exception event is known as "exception value." When property incurs exception value, a portion of that value is added to its MAV in proportion to average maximum assessed value over average real market value. *See*, *e.g.*, ORS 308.153(1) (setting forth the MAV formula when exception value is added as new property or new improvements).

Defendant mistakenly believed the home was only 90 percent complete when it visited the property on February 17, 2021. Upon inspection on February 11, 2022, Defendant concluded that the home was complete as of the January 1, 2022, assessment date, and added exception value equating to 10 percent of the total structure value of the home to the 2022-23 tax roll. Defendant classified this as "new property or new improvements to property[,]" one of the six enumerated exception events. Or. Const. art. XI, § 11(1)(c)(A); ORS 308.146(3)(a); (*see* Ex F at 2 (designating the exception value under category "NI.")). As a result, Defendant argues that it was required to determine MAV and assessed value as provided in ORS 308.149 to 308.166. *See* ORS 308.146(3)(a) (so requiring).

Plaintiff argues that Defendant was precluded from adding the exception value to the 2022-23 tax roll because the home was actually completed on or about August 28, 2020. Plaintiff contends that the improvements were an integral part of the property as of the inspection date, and therefore do not come within the definition of omitted property under the Supreme

Court's holding in *Village at Main Street*. *See Clackamas County Assessor v. Village at Main Street,* 349 Or 330, 346, 245 P3d 81, 90 (2010) (holding that an integral part of property, which is listed on the assessment roll, does not qualify as omitted property). Additionally, Plaintiff asserts that even if the improvements qualified as omitted property, Defendant failed to follow the omitted property procedures required by ORS 311.216 to 311.232.

B.      *Omitted Property*

The court understands Plaintiff to make two related arguments. First, because the home was completed when the county appraised the property for 2021-22, adding exception value for 2022-23 property would constitute an improper revaluation. Second, any exception value should have been added under the omitted property procedures, which Defendant acknowledges it did not follow. (*See* Ptf's Ex 8 (October 11, 2023, letter from Defendant, stating "If we are unable to add tax year 2021/22 into this case, Lincoln County would like to make a motion to dismiss * * * We will then follow omitted property procedures to correct the tax rolls from 2021 to current, per ORS 311.216 – 311.232.")).

Plaintiff may be correct in his assertion that Defendant was prohibited from adding the exception value to the 2022-23 tax roll as omitted property, given that, as the court concludes below, the property in dispute was an integral part of the property on the assessment roll. However, since Defendant did not assert that the exception value was added as omitted property or utilize the omitted property procedures, the court need not decide that issue.

C.      *New Property or New Improvements (NPNI) to Property*

Defendant found the subject property incurred exception value because completion constituted "new property or new improvements to property[,]" one of the six enumerated exception events. Or. Const. art. XI, § 11(1)(c)(A); ORS 308.146(3)(a); (*see also* Def's Ex F at

2 (designating the exception value under category "NI."). As a result, Defendant argues that it was required to determine MAV and assessed value as provided in ORS 308.149 to 308.166. *See* ORS 308.146(3)(a) (so requiring). Defendant has asked the court to sustain the 2022-23 tax roll on that basis.

The court understands Plaintiff to argue that the Defendant could not add any exception value to the 2022-23 tax roll as a result of the "new property or new improvements" exception because the improvements were not "new" – that is, the property for which Defendant sought to add exception value (the final 10 percent of construction of the home) came into existence on or about August 28, 2020, more than a year prior to the assessment date at issue (January 1, 2022).

    1. *Definition of new*

The phrase "new property or new improvements" is defined as "changes in the value of property as the result of a number of specified events, including "[n]ew construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property." ORS 308.149(6)(a)(A). The definition excludes changes in the value of the property as the result of "[g]eneral ongoing maintenance and repair" (commonly known as "GOMAR") or "[m]inor construction," which is defined based on the RMV of improvements made over specified times. ORS 308.149(6)(b); *see* ORS 308.149(5). The text of ORS 308.149(6) does not use the term "recent," nor does it expressly define "new" in a manner that requires property or improvements to have been created or constructed within a specific time period in relation to the assessment date at issue. *See Dunne v. Dept. of Rev.*, ___ OTR ___ (Jan 5, 2024) (slip op at 7). The meaning of "new property or new improvements to property" (NPNI) was the subject of the opinion by the Oregon Supreme Court in *DISH Network v. Department of Revenue*, 364 Or 254, 285, 434 P3d 379 (2019) (*abrogating Douglas County Assessor v. Crawford*, 21 OTR 6 (2012)).

Prior to *DISH Network*, and pursuant to the holding of the Regular Division of the tax court in *Crawford*, property existing more than a year before the assessment date was not considered "new property or new improvements." Thus, assessors could not add older property to a tax account for the first time without prior notice, but were, instead, required to give advance notice under statutory procedures for adding "omitted property." *Douglas County Assessor v. Crawford*, 21 OTR 6 (2012).

In *Dish Network*, the Supreme Court abrogated the holding in *Crawford*. Under *DISH Network*, property may be NPNI if it has not been previously included in the assessment of the land or improvements. *See* 364 Or at 285 ("'new property or new improvements' is not limited to property that has been created or acquired by the taxpayer within some designated time period but includes all property that is lawfully added by the assessor to a taxpayer's property tax account on an assessment roll."). The constitutional holding of *DISH Network* was anticipated by the legislature in a 2015 amendment to the statutory definition of "new property." As amended, ORS 308.153(3) states:

> "(a) For purposes of this section, property shall be considered new property, or new improvements to property, for a tax year if the property:
> "(A) Constituted an integral part of the land or improvements on the assessment date or the date of a site inspection by the assessor for appraisal purposes for *any prior tax year*;
> "(B) Has been continuously in existence since the prior tax year; and
> "(C) Was not included in the assessment of the land or improvements for *any prior tax year*.
> "(b) The following is evidence that the property was not included in the assessment of the land or improvements for a prior tax year:
> "(A) There is no express reference to the property in the records of the assessor; and
> "(B) The assessor's valuation of the land or improvements of which the property is an integral part increases as a result of inclusion of the property in the assessment."

ORS 308.153(3) (emphasis added). Consistent with *DISH Network*, the above definition of new

property includes property existing in "any prior tax year" but not previously assessed.

In *Dunne*, which was decided after trial was held in this case, the Regular Division of the Tax Court analyzed the impact of ORS 308.153(3) on the interplay between the "omitted property" exception and the "new property and new improvements" exception, given the earlier court precedents in both *DISH Network* and *Village at Main Street*. The court in *Dunne* noted that, if the three conditions in ORS 308.153(3) are satisfied, "ORS 308.153(3) requires the assessor to add the value of the improvements [as NPNI] even if they are an "integral part" of existing property and thus are deemed to have been included, but undervalued, on a prior year's roll under *Village at Main Street*" and therefore would not be includable as omitted property. *Dunne*, ___ OTR ___ (slip op at 12). Thus, the court next considers whether ORS 308.153(3) required the assessor to add the value as NPNI.

2. *ORS 308.153(3)*

Pursuant to the court's holding in *Dunne*, the next issue for the court's determination is whether the three conditions in ORS 308.153(3) have been satisfied in the present case, such that the assessor was required to add the value of the improvements as NPNI.

a. Integral part of the land or improvements

Property is "not an integral part of the property that had been listed on the assessment roll" if it "was separate from the listed property [and] it could be valued and transferred independently from the listed property." *See Village at Main Street*, 349 Or 330, 339, 245 P3d 81, 86 (2010). In this case, the property at issue is the improvements constituting the final 10 percent of construction of the home. Hurtt testified on behalf of Defendant that at the time he visited the property on February 17, 2021, his "best judgment" was the property was 90 percent complete as of January 1, 2021. His conclusion was based on some visual evidence (from his

viewpoint outside the home) that the flooring was not complete at the time of the site visit. The alleged NPNI was an integral part of the property listed on the assessment roll because the property sought to be included (the 10 percent of construction that Defendant mistakenly believed remained incomplete) could not have been valued and transferred independently from the property listed on the assessment roll by Defendant (the 90 percent of the home that Defendant acknowledges was complete as of January 1, 2021). The improvements at issue therefore constituted an "integral part of the land or improvements" on the assessment date, January 1, 2022.

### b. Continuously in existence

The court readily concludes that the improvements at issue were continuously in existence from the date of the site visit for tax year 2021-22 until the assessment date (January 1, 2022) for the tax year at issue. Plaintiff maintains that the home was completed on or about August 28, 2020, and provided ample evidence of that fact. Although Defendant testified to a belief that the home was only 90 percent complete as of the February 17, 2021, site visit, the court finds that Defendant's conclusion was not based on credible evidence (the appraiser's belief, based on a viewpoint from outside the home, that the flooring may not have been completed as of the date of the site visit). No other evidence was presented that would allow the court to conclude that the improvements were not continuously in existence from August 28, 2020, until January 1, 2022.

A site inspection was performed on February 11, 2022, and the appraiser then observed, that the home was 100 percent complete. However, the appraiser based her conclusion only on what she saw that day and not on any evidence that any changes or improvements had been made between the date of the earlier site visit and February 11, 2022. Stated another way, the

testimony of Long regarding the status of the home on February 11, 2022, does not negate the court's conclusion that Hurtt was simply mistaken when he concluded on February 17, 2021, that the home was only 90 percent complete. The court concludes that the second condition of ORS 308.153(3) has been satisfied.

3. *Not included in the assessment of the land or improvements*

Although the court earlier concluded that the improvements were an integral part of other real property listed on the tax roll, that conclusion is not determinative of whether the *value* of the improvements was "included in the assessment." As the Regular Division noted in *Dunne,*

> "Property 'not included in the assessment' could [] refer to improvements that an assessor failed to value, or to improvements that the assessor failed to list on the assessment roll, or both. The ambiguity is illustrated in *Village at Main Street,* and in this court's opinion in *West Foods,* 10 OTR 7 (1985). In both cases, the assessor physically appraising property overlooked or otherwise failed to 'include' the *value* of specific improvements on the roll, but still was deemed to have 'listed' the improvements on the roll as an 'integral part' of other real property."

*See Dunne v. Dept. of Rev.*, ___ OTR ___ (Jan 5, 2024) (slip op at 17) (emphasis in original).

ORS 308.153(3)(b) provides some guidance as to what the court is to consider as evidence that the property was "not included in the assessment":

> "(b) The following is evidence that the property was not included in the assessment of the land or improvements for a prior tax year:
> "(A) There is no express reference to the property in the records of the assessor; and
> "(B) The assessor's valuation of the land or improvements of which the property is an integral part increases as a result of inclusion of the property in the assessment."

Neither party offered a complete record of the county's prior appraisal cards into evidence. The only evidence before the court regarding references to the property in the assessor's records indicate that the final 10 percent of construction value had not previously been included in the assessed value. Long testified that notes from the February 17, 2021, site visit

indicated the home was only 90 percent complete. As a result of Long's inclusion of the exception value, the valuation clearly increased. (*See* Def's Ex F at 3 (showing exception RMV of $61,660 and exception MAV of $36,133 added to the 2022-23 tax roll).) Together, these facts provide some evidence, pursuant to ORS 308.153(3)(b), that the value of the improvements previously were "not included in the assessment."

This court has previously noted that to prevail in the face of silent assessor's records and an increased assessment, a taxpayer would need to provide countervailing evidence that the property in question had formerly been assessed. *Rankin v. Multnomah County Assessor,* TC-MD 180080G, 2019 WL 6836008 at *6 (Or Tax M Div, July 22, 2019). This burden is even greater where, as here, Defendant provided some evidence that suggests that the improvements at issue were specifically excluded from prior assessments. Based on the evidence in the record, the court concludes that Plaintiff has not met his burden to show that the improvements were previously included in a prior assessment. The court notes that the omitted property procedures are not applicable when the Defendant adds exception value as "new improvements" rather than omitted property. *See id*. Therefore, Defendant was not precluded from adding exception value for the improvements to the 2022-23 tax roll.

## III. CONCLUSION

For the reasons stated above, the court finds that Defendant did not have to rely on the omitted property statutes to add exception value for new property under ORS 308.153(3) for the 2022-23 tax year. The holdings in *DISH Network* and *Dunne*, and the amendments to ORS 308.153(3), define new property or new improvements as property not previously placed on the tax rolls. On this basis, Plaintiff's reliance on *Village at Main Street* was misplaced. Even if Plaintiff's home was substantially complete in 2020, the assessment process allows for

recognition of NPNI if the value has not already been included in a prior assessment. Plaintiff did not meet his burden of proof that 100 percent of the improvements were reflected on the 2021-22 tax rolls. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal of property identified as account R531317 for the 2022-23 tax year is denied.

_____

***If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.***

***This Decision was signed by Magistrate Richard D. Davis and entered on March 26, 2025.***